## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

LISA S. PEEL, Individually and as     )
Personal Representative of the Estate     )
of EUGENE SUDWEEKS, deceased,     )
and THOMAS EUGENE     )     FILE NO.: _____
SUDWEEKS, as heirs of EUGENE     )
SUDWEEKS,     )
     )
     Plaintiffs,     )     **CIVIL ACTION COMPLAINT**
v.     )
     )     **JURY TRIAL DEMANDED**
HAMILTON MATERIALS, INC.;     )
     )
KAISER GYPSUM COMPANY,     )
INC.;     )
     )
KELLY-MOORE PAINT     )
COMPANY, INC.;     )
     )
MURCO WALL PRODUCTS, INC.;     )
     )
THE SHERWIN-WILLIAMS     )
COMPANY;     )
     )
     Defendants.     )

## CIVIL ACTION COMPLAINT

PLAINTIFFS, Lisa S. Peel, Individually and as Personal Representative of the Estate of Eugene Sudweeks, Deceased, ("Plaintiffs' Decedent"), and Thomas Eugene Sudweeks, as the heirs of Eugene Sudweeks (collectively "Plaintiffs"), by and through their attorneys, The Nemeroff Law Firm, P.C., hereby bring this Civil Action Complaint, for compensatory and punitive damages, whereof the following is a statement:

1. This action is brought pursuant to the Utah Wrongful Death Act, §78B-3-106, *et seq.* for the wrongful death of Plaintiffs' Decedent on behalf of all persons entitled to recover damages. Additionally, pursuant to Utah Code Ann. 78B-3-107, *et seq.*, Plaintiff

Lisa S. Peel brings this survival action on behalf of all heirs of Plaintiffs' Decedent.

      2.      Plaintiffs' Decedent was diagnosed with lung cancer, caused by exposure to asbestos, on or about January 6, 2020, and died from that asbestos-related disease on March 5, 2020 in Salt Lake County in the State of Utah.

## JURISDICTION AND VENUE

      3.      This Court has personal jurisdiction because Defendants are duly licensed to do business in the State of Utah and/or at all material times are or have been engaged in business in the State of Utah.

      4.      Each defendant identified on Exhibit A is amenable to suit in the State of Utah by reason of having sold, distributed, and/or installed the aforementioned asbestos-containing products in Utah or by reason of having placed the same into the stream of commerce for use in Utah, and by reason of having committed tortious acts against the Plaintiffs in this state in addition to Defendants' other general construction product business sales.

      5.      Further, this Court has diversity jurisdiction over the parties because the Plaintiffs are citizens of the State of Utah and none of the Defendants are citizens of the State of Utah. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

      6.      Pursuant to 28 U.S.C A. §1391(b)(2) venue is proper in this judicial district because a substantial part of the events or omissions occurred in the State of Utah.

## PARTIES

7.     Plaintiff Lisa S. Peel was appointed Personal Representative of the Estate of Eugene Sudweeks, deceased, by the Third Judicial District Court for Salt Lake County, State of Utah, on June 10, 2020. Plaintiff maintains this action on behalf of the estate pursuant to her powers under Utah Uniform Probate Code, § 75-3-701, *et seq*.

8.     The Decedent is survived by his two children: Lisa S. Peel and Thomas Eugene Sudweeks, both citizens and residents of Salt Lake County, Utah. These persons are heirs of the decedent pursuant to Utah Code Ann. § 78B-3-105.

9.     Plaintiffs bring this action for monetary damages as a result of Mr. Sudweeks contracting an incurable asbestos cancer that was the result of breathing asbestos dust.

10.     During the time period that Mr. Sudweeks was exposed to asbestos, the manufacturers of asbestos products affirmatively chose not to adequately warn of the lethal hazards of breathing asbestos dust, often deciding not to issue any warning at all, despite the fact that these asbestos companies knew that breathing small amounts of asbestos dust could be fatal. When the asbestos dust is breathed in, it can cause asbestos cancer many decades later. The scientific and regulatory communities around the world are in unanimous agreement that all types of asbestos released from asbestos products cause cancer, and that there is no safe level of exposure to asbestos.

11.     Mr. Sudweeks' work placed him around asbestos-containing products, including but not necessarily limited to joint compounds and drywall products all of which can release vast amounts of asbestos dust into the air when disturbed. At present, it is

known that Mr. Sudweeks' employment related to these allegations includes the following work sites:

> 1963-1979:   Various Residential and Commercial worksites in and around Salt Lake City, Utah.

Mr. Sudweeks' exposure to asbestos occurred when he worked as a drywaller for Spray Texture Drywall from 1963 through the 1979, at various residential and commercial worksites in and around Salt Lake City, Utah. Asbestos dust was generated and released into the air when Mr. Sudweeks, and other co-workers in close proximity, used, manipulated, and cleaned asbestos-containing products, including but not necessarily limited to: joint compounds and drywall products via mixing, sanding, and sweeping. The asbestos dust generated during the use, manipulation, and cleaning process is invisible to the naked eye. Investigation continues into Mr. Sudweeks' work with asbestos products and his exposures to those products.

12.    All of the named defendants listed on the caption and on the attached list, which is incorporated by reference herein, are foreign corporations who are amenable to jurisdiction in the courts of Utah by virtue of their respective conduct of substantial and/or systematic business in Utah which subjects them to the jurisdiction of the Utah courts pursuant to the Utah Long-Arm Statute. Each defendant corporation does or in the past mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, which are or in the past were sold, distributed, and used in Utah. The plaintiff was exposed to various asbestos-containing products while working at various jobs listed above.

## FIRST CAUSE OF ACTION
### <u>NEGLIGENCE</u>

13.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

14.     At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of asbestos and/or asbestos-containing products, materials or equipment.

15.     The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, certain asbestos and asbestos-containing materials, products or equipment to be placed in the stream of interstate commerce with the result that said asbestos and asbestos-containing materials, products, or equipment came into use by Mr. Sudweeks.

16.     The dangers of breathing asbestos were first published in the medical literature in the 1890s. By the late 1950s, there were hundreds of medical articles highlighting the dangers of being around asbestos dust. Confidential corporate documents from many of the named defendant companies reveal that (a) the dangers of asbestos were well understood; (b) asbestos was cheaper to use in the products than replacement substances such as clay; (c) the product manufacturing industry actively fought governmental regulation and the banning of asbestos.  To this day industry has been successful in their lobbying efforts to keep asbestos legal in the United States.

17.     Throughout the course of his employment, Mr. Sudweeks worked with and was exposed to the asbestos and asbestos-containing materials, products, or equipment mined, manufactured, processed, imported, converted, compounded, and/or sold by the Defendants.

18.     During the course and scope of his employment, Mr. Sudweeks was exposed to defendants' asbestos and asbestos-containing materials, products, or equipment, which exposure directly and proximately caused him to develop lung cancer.

19.     Defendants, acting by and through their servants, agents, and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell products that were not unreasonably dangerous or defective and/or a duty to warn Mr. Sudweeks and foreseeable users of said products of the dangers and defects which the Defendants created, knew, or, within the exercise of reasonable care, should have known.

20.     Mr. Sudweeks, whose livelihood was dependent upon the work that he did for the employer listed in Paragraph 11 was required to work with and around asbestos and/or asbestos-containing products, materials or equipment that manufactured, processed, distributed, supplied and/or sold by Defendants. Defendants knew or should have known that persons employed such as Mr. Sudweeks would be required to and would come into contact with and would work in close proximity to said products.

21.     Mr. Sudweeks sustained injuries caused by no fault of his own and which could not be avoided through the use of his reasonable care. Mr. Sudweeks' development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of defendants in that they manufactured, processed, sold, supplied or otherwise put said asbestos or asbestos-containing products, materials or equipment, into the market and into the stream of interstate commerce, while they knew, or in the exercise of ordinary care should have known, that said products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Mr. Sudweeks' body, lungs,

respiratory system, skin, health, and general well-being. Further, defendants knew or in the exercise of reasonable care should have known that Mr. Sudweeks would not know of such danger to his health.

22.     Mr. Sudweeks' illness and disability are the direct and proximate result of the negligence and carelessness of defendants, jointly and severally, in that, even though the defendants knew, or in the exercise of ordinary care should have known, that the asbestos and asbestos-containing materials, products or equipment were deleterious, poisonous, and highly harmful to plaintiffs body, lungs, respiratory system, skin, and health.

23.     Defendants breached their duties and were negligent in the following acts and/or omissions:

(a)     Affirmatively chose not to advise Mr. Sudweeks of the dangerous characteristics of their asbestos and/or asbestos-containing materials, products or equipment;

(b)     Affirmatively chose not to provide Mr. Sudweeks with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful asbestos-containing materials, products or equipment;

(c)     Affirmatively chose not to place any warnings or sufficient warnings on their containers of said asbestos and asbestos-containing materials, products or equipment to warn the handlers of the dangers to health in coming in contact with said asbestos and asbestos-containing materials, products or equipment;

(d)     Affirmatively chose not to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing said asbestos-containing materials, products or equipment;

(e)     Inadequately warned, if, in fact, they warned at all, persons such as plaintiff of the dangers to their health in coming in contact with and breathing said asbestos fibers from asbestos and/or asbestos-containing materials, products or equipment;

(f)     Chose not recommend methods to improve the work environment;

(g)     Affirmatively chose not develop alternative products;

(h)     Continued to use a known cancer-causing product, to-wit: asbestos; and

(i)     After discovering that the asbestos exposure caused a progressive lung disease, the defendants affirmatively chose not to inform the plaintiff of the need for monitoring and periodic evaluations up to and including the filing of this complaint.

24.     Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing asbestos and/or asbestos-containing products, materials or equipment into the stream of commerce, knew, or in the exercise of reasonable care, should have known about the risks associated with their products. The products in question were defective at the time they left the control of the defendants.

25.     Defendants were negligent and breached their duty of due care to Mr. Sudweeks by taking or choosing not to take the actions as previously alleged to avoid harm to Mr. Sudweeks and other foreseeable users, in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, distribution of the asbestos and/or asbestos-containing products, materials, or equipment at issue in the stream of commerce.

26.     The hazards posed by exposure to asbestos and/or asbestos-containing products, materials, or equipment and the resulting injuries and damages to plaintiff were reasonably foreseeable or should have been reasonably foreseen by Defendants.

27.     As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, Mr. Sudweeks developed malignant lung cancer, as a consequence of which, through no fault of his own, he was severely injured, disabled and damaged.

28.     As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

29.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

30.     The defendants impliedly warranted that said asbestos materials were of good and merchantable quality and fit for their intended use.

31.     The implied warranty made by the defendants that the asbestos and asbestos-containing materials, products, or equipment were of good and merchantable quality and for the particular intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein Mr. Sudweeks carried out his duties while working with or in the vicinity of asbestos and asbestos-containing materials, products, or equipment.

32.     As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for the particular intended use, Mr. Sudweeks developed an illness, to-wit: lung cancer.

33.     As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

## THIRD CAUSE OF ACTION
## GROSS NEGLIGENCE-WILLFUL, WANTON, AND RECKLESS CONDUCT

34.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

35.     Mr. Sudweeks and others in his position worked in close proximity to the

asbestos and asbestos-related materials used, sold, supplied, or manufactured by the defendants, and the exposure and hazard to each of them, in plaintiff's presence, as well as others in his position, was known, or in the exercise of reasonable care should have been anticipated, by the defendants.

36.     The defendants have known or should have known since at least 1929, and possibly as early as 1890, of medical and scientific data which clearly indicates that the products, asbestos, and asbestos-containing products, were hazardous to the health and safety of the plaintiff and others in the plaintiff's position, and prompted by pecuniary motives, the defendants, individually and collectively, ignored and chose not to act upon said medical and scientific data and conspired to deprive the public, and particularly the users, of said medical and scientific data, depriving them, therefore, of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of said defendants. As a result, the plaintiffs have been severely damaged as is set forth below.

37.     The defendants intentionally and fraudulently continued to conceal the dangers of asbestos exposure from 1929 through the 1970s, thus denying plaintiff the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations, stop smoking, and avoiding further dust exposure. Specifically, Defendants' intentional and fraudulent conduct included the following acts and omissions:

(a)     affirmatively choosing not to warn prior users when the defendants had knowledge of the need for monitoring due to prior exposure;

(b)     affirmatively choosing not to issue recall type letters to prior users;

(c)     frustrating the publication of articles and literature from the 1930's through at least 1976;

(d)     rejection by top management of advice of corporate officials to warn of the hazards of their asbestos products; such rejection being motivated by the

possibility of adverse effects on profits; and

(e)    the intentional inadequacy of (and delay in the use of) the warnings on asbestos products.

38.    The affirmative acts of the defendants, and each of them, as hereinabove set forth were intentional and willful and done with willful disregard of the safety of Mr. Sudweeks and others similarly situated at a time when defendants, and each of them, had knowledge, or should have had knowledge of the dangerous effect of asbestos and asbestos-containing materials, products, or equipment upon the body of human beings, including Mr. Sudweeks and others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the defendants and subscribed to by them, nevertheless placed into the stream of commerce, for their own profit, this dangerous asbestos material with full knowledge that it was being used and would be used in the future to the detriment of the health of Mr. Sudweeks and others similarly situated, and Plaintiffs are thereby entitled to punitive damages.

39.    Accordingly, as a result of the Defendants' conduct in which they acted in willful, wanton, gross negligence and in total disregard for the health and safety of the user or consumer, such as Mr. Sudweeks, Plaintiffs therefore seek exemplary and punitive damages against defendants to punish the defendants for their actions, which were willful, wanton, gross, and in total disregard of the health and safety of the users and consumers of their products.

## FOURTH CAUSE OF ACTION
## <u>FALSE REPRESENTATION</u>

40.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

41.     During, before, and after Mr. Sudweeks' exposure to asbestos products manufactured, supplied, sold or otherwise used by defendants, defendants falsely represented facts, including the dangers of asbestos exposure, to Mr. Sudweeks in the particulars alleged in the paragraphs above, while defendants each had actual knowledge of said dangers of asbestos exposure to persons such as Mr. Sudweeks, and while defendants each knew of the falsity of their representations and/or made the representations in reckless disregard of their truth or falsity.

42.     The foregoing representations were material conditions precedent to plaintiff's continued exposure to asbestos containing products, and defendants each intended that plaintiff act upon the representations by continuing his exposure to the asbestos products. Mr. Sudweeks was ignorant of the falsity of defendants' representations and rightfully relied upon the representations.

43.     As a direct and proximate result of Mr. Sudweeks' reliance upon defendants' false representations, Plaintiffs have suffered injury and damages hereinafter described.

## FIFTH CAUSE OF ACTION
## <u>INADEQUATE WARNING</u>

44.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

45.     At all times material hereto, the Defendants knew or should have known of the harmful effects and/or harmful dangers of working with asbestos and/or asbestos-containing products, materials, or equipment and exposures to inhalable asbestos.

46.     Defendants had a duty to warn individuals working at Mr. Sudweeks' jobsites, including but not limited to Mr. Sudweeks, of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

47.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, Defendants affirmatively chose not to warn and/or inadequately warned Mr. Sudweeks of the dangers, including but not limited to:

(a)     choosing not to provide adequate cautions, warnings, and/or hazard statements and/or explanations with its products which should have been designed to provide Mr. Sudweeks knowledge about the hazards caused by exposure to their products and how to eliminate such hazards;

(b)     choosing not to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with their products which should have been designed to provide Mr. Sudweeks knowledge about the hazards caused by exposure to its products and how to eliminate such hazards;

(c)     choosing not to conduct on-site personnel training sessions with exposed workers which should have been designed to provide to the workers knowledge about the hazards caused by exposure to the products, and how to eliminate the hazards;

(d)     choosing not to adequately test and research their products as to the hazards created during their use and failed thereafter to provide the results of such tests and research to exposed workers such as Mr. Sudweeks;

(e)     choosing not to inspect the workplace in which their products were being used to determine whether the products being used were deleterious to the health of exposed workers;

(f)     choosing not to design, process and transport their products in a manner intended to minimize exposure during normal working conditions;

(g)     choosing not to specify and market their products on the express agreement that necessary engineering controls, work practices, and other industrial hygiene controls would be implemented in conjunction with use of the products after it was known or should have been known that adequate protective measures were not being implemented;

(h)     choosing not to recall their defective product or manufacture a reasonably safer alternative;

(i)     choosing not to take adequate precautions and industrial hygiene measures to protect Mr. Sudweeks and exposing workers when installing, repairing, or tearing out asbestos and/or asbestos-containing products, materials, or equipment including, but not limited to, providing protection from dust and fibers emanating from the installation, repair, and/or removal process; choosing not to use local ventilation; choosing not to provide warnings to Mr. Sudweeks and workers in the facilities at issue that exposure to dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment was hazardous and carcinogenic; choosing not to adequately clean up debris from the installation, repair and/or removal process; failing to use wet down procedures; and/or failing to take other appropriate safety and industrial hygiene measures;

(j)     otherwise choosing not to act reasonably under the totality of the circumstances.

48.     Defendants manufactured, processed and/or sold asbestos and/or asbestos-containing products, materials, or equipment, for Mr. Sudweeks' employer, and these products were used by Mr. Sudweeks' various employers. Thus, Defendants had a duty to warn individuals working at Mr. Sudweeks' jobsites, including but not limited to Mr. Sudweeks, of the dangers associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment.

49.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, the Defendants acted unreasonably in choosing not to provide adequate warnings and/or instructions as to the hazards associated with exposure to asbestos and/or asbestos-containing products, materials, or equipment.

50.     At the time the asbestos and/or asbestos-containing products, materials, or equipment left Defendants' control without adequate warning or instruction, Defendants created an unreasonably dangerous condition that it knew or should have known would pose a substantial risk of harm to a reasonably foreseeable claimant, such as Mr. Sudweeks. In the alternative, after the asbestos-containing products left Defendants' control, Defendants became aware of or in the exercise of ordinary care should have known that their products posed a substantial risk of harm to a reasonably foreseeable user, such as Mr. Sudweeks, and refused to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

51.     Defendants' conscious decision not to provide adequate warnings as to the hazards associated with exposure to asbestos and/or asbestos-containing products, materials, or equipment or to provide proper instructions on the use, handling, and storage of asbestos and/or asbestos-containing products, materials, or equipment caused Mr. Sudweeks to develop lung cancer as a consequence of which he has been injured and damaged and claims damages of the Defendant jointly and severally.

52.     As a result of the Defendants affirmatively choosing not to warn, Plaintiffs and Plaintiffs' Decedent suffered and will continue to suffer the following injuries and damages hereinafter alleged.

### SIXTH CAUSE OF ACTION
### STRICT LIABILITY

53.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

54.     At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of asbestos

and/or asbestos-containing products, materials or equipment.

55.     At all times material hereto, the Defendants knew or should have known of the harmful effects and/or harmful dangers of working with asbestos and/or asbestos-containing products, materials, or equipment and exposures to inhalable asbestos.

56.     Defendants had a duty to warn individuals working at the Decedent's jobsites, including but not limited to Decedent, of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

57.     Despite Defendants' knowledge of the insurable harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, the Defendants affirmatively chose the level of warning by either not warning and/or inadequately warning Decedent of the dangers of asbestos and asbestos dust.

58.     The products mined, manufactured, sold, distributed, supplied and/or used by these defendants were defective, unreasonably dangerous, inherently dangerous, insurable and unreasonably dangerous per se to Decedent, who was an intended and foreseeable user and/or bystander exposed to these products.   These defects include, without limitation, the following:

    (a)   The mining, manufacture, sale, supply, distribution and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

    (b)   The mining, manufacture, sale, supply, distribution and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to the Decedent who would be foreseeably exposed to them as a result of their intended use;

    (c)   The affirmative act of not warning or insufficiently warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

(d)     Providing inadequate cautions, warnings, and/or hazard statements and/or explanations with its products which should have been designed to provide to the Decedent knowledge about the hazards caused by exposure to their products and how to eliminate such hazards;

(e)     Providing inadequate product inserts, informative brochures, employee training literature, posters, safety instructions and/or other written materials with their products which should have been designed to provide to the Decedent knowledge about the hazards caused by exposure to its products and how to eliminate such hazards;

(f)     Conducting inadequate on-site personnel training sessions with exposed workers which should have been designed to provide to the workers' knowledge about the hazards caused by exposure to the products, and how to eliminate the hazards;

(g)     Inadequately testing and researching their products as to the hazards created during their use and providing incomplete results of such tests and research to the intended or foreseeable users of exposed individuals such as Decedent;

(h)     Inadequately inspecting workplaces in which their products were being used to determine whether the products being used were deleterious to the health of exposed workers or individuals;

(i)     Inadequately inspecting their products to assure sufficiency and adequacy of warnings and safety cautions;

(j)     Inadequately designing, processing and transporting their products in a manner intended to minimize exposure during normal working conditions;

(k)     Inadequately designing their products when the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

(l)     Defects in the composition and construction of these products;

(m)     Affirmatively specifying and marketing their products without the express agreement that necessary engineering controls, work practices, and other industrial hygiene controls would be implemented in conjunction with use of the products after it was known or should have been known that adequate protective measures were not being implemented;

(n)     Issuing inadequate recalls of their defective product or manufacturing a reasonably safer alternative;

(o)     Inadequately packaging their products so that they could be safely

transported, handled, stored or disposed of;

(p)     Implementing inadequate precautions and industrial hygiene measures to protect Decedent and exposed workers when installing, repairing, or tearing out asbestos and/or asbestos-containing products, materials, or equipment including, but not limited to, providing protection from dust and fibers emanating from the installation, repair, and/or removal process; using or implementing inadequate local ventilation, warnings, cleaning procedures and other appropriate safety and industrial hygiene measures;

(q)     Affirmatively acting unreasonably under the totality of the circumstances.

59.     It was the continuing duty of the defendants to advise and warn purchasers, consumers, and users, and all prior purchasers, consumers, and users, of all dangers, characteristics, potentialities and/or defects discovered subsequent to their initial marketing or sale of said asbestos and asbestos products.

60.     The actions of the Defendants described and alleged above were wrongful under the Utah Products Liability Act in one or more of the following ways:

(a)     Said asbestos-containing products were unreasonably defective in one or more of the following ways:

1.      in that said products were and are unavoidably unsafe, and defendants affirmatively chose how to warn, selecting to carry improper, inadequate and incorrect warnings about their asbestos dust hazards about which the defendants knew or should have known;

2.      in that said products were and are unreasonably dangerous, in that they were and are dangerous to an extent beyond that which the ordinary worker or bystander in the position of the decedent would contemplate;

3.      in that any warnings, information and/or safety instruction said products may have carried, were improper and inadequate in that they affirmatively determined the information told users and/or others, including the decedent, leading to inadequate and unreasonable communication of the hazards and dangers of coming in contact with said products, including the risk of cancer and death.

(b)     The defendants knew or should have known that said asbestos-containing products were inherently dangerous to those who used them, yet the

defendants affirmatively chose not to use reasonable and/or ordinary care in seeing to it that said products carried proper, adequate and correct warnings of the dangers of said products, and the exposure of the decedent and others like the decedent to these products was reasonably foreseeable to the defendants;

(c)     The defendants breached warranties, either implied or expressed, in that these products were not fit and/or safe for their known and intended purposes and uses.

1.     The Defendants impliedly warranted that said asbestos materials were of good and merchantable quality, safe, and fit for their intended use.

2.     The implied warranty made by the Defendants that the asbestos and asbestos-containing materials, products, or equipment were of good and merchantable quality and for the particular intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein decedent carried out his duties while working with or in the vicinity of asbestos and asbestos-containing materials, products, or equipment.

3.     As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for the particular intended use, Decedent developed an illness, to-wit: Lung Cancer.

61.     Defendants affirmatively chose not provide adequate warnings as to the hazards associated with exposure to asbestos and/or asbestos-containing products, materials, or equipment or to provide proper instructions on the use, handling, and storage of asbestos and/or asbestos-containing products, materials, or equipment. Defendants' affirmative acts caused Decedent to develop lung cancer, which injured and damaged Plaintiffs and for which they claim damages of the Defendants in strict liability.

62.     The defective conditions of Defendants' products and fault, and affirmative acts as noted above, are a proximate cause of Plaintiffs' injuries complained of herein.

63.     As a result of the Defendants' actions, the Plaintiffs suffered and will continue to suffer the following injuries and damages hereinafter alleged.

## PUNITIVE DAMAGES

64.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

65.     As a result of the willful, wanton and gross misconduct and gross negligence of the Defendants as alleged herein, the Plaintiffs seek and request punitive or exemplary damages. Defendants malicious and outrageous disregard for the safety of users of asbestos products, including Plaintiffs' Decedent, including but not limited to their intentional concealment of the dangers of asbestos that they knew of yet consciously refused to warn users of those dangers evidences a conscious indifference to the safety and health of users and bystanders of the products they profited from selling. Plaintiffs, therefore, seek punitive damages or exemplary damages, according to proof.

## DAMAGES

66.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

67.     Plaintiffs file this action under and pursuant to Utah Wrongful Death Act, §78B-3-106 *et seq.*, and Utah Survival Action, §78B-3-107, *et seq.*, and seek to recover any and all damages allowable and incurred by the Estate of Eugene Sudweeks and all beneficiaries.

68.     As a result of the above-alleged conduct of the Defendants, Plaintiffs' decedent developed lung cancer, as a consequence of which, Plaintiffs have been damaged as follows:

(a) for hospital and medical expenses incidental to decedent's last illness;

(b)  for loss of earnings and future earning power of the decedent;

(c)  for the loss of decedent's general health, strength, and vitality;

(d)  for the loss of pecuniary contributions to the Plaintiffs;

(e)  for the loss of consortium, society, aid, companionship and services to the Plaintiffs;

(f)  for the future loss of consortium, society, aid, companionship and services to the Plaintiffs;

(g)  for the pain and suffering of the decedent;

(h)  for all other damages recoverable under said Act.

**WHEREFORE**, the Plaintiffs pray for judgment against all Defendants for actual and punitive damages, lost wages and special damages in amounts to be determined by the trier of fact, and plus costs of this action.

**PLAINTIFFS REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

THE NEMEROFF LAW FIRM

_____

Richard I. Nemeroff, #13966
5532 Lillehammer Lane, Ste. 100
Park City, UT  84098
Tel:  435-602-4470
Fax:  435-602-4471
E-mail:  ricknemeroff@nemerofflaw.com

Attorney for Plaintiffs

## EXHIBIT A

## DEFENDANT SERVICE LIST

HAMILTON MATERIALS, INC.
c/o Jeffrey P. Walsworth
1 City Blvd. West, 5th FL
Orange, CA 92868
***And***
145 W. Meats Ave.
Orange, CA 92865

KAISER GYPSUM COMPANY, INC.
Corporation Service Company
2626 Glenwood Avenue, Suite 550
Raleigh, NC 27608

KELLY-MOORE PAINT COMPANY, INC.
c/o Bill D. Fountain
1 Post St., Ste. 2400
San Francisco, CA 94104

MURCO WALL PRODUCTS, INC.
201 NE 21st St.
Fort Worth, TX 76164-8527

THE SHERWIN-WILLIAMS COMPANY
c/o Corporation Service Company
15 West South Temple
Suite 600
Salt Lake City, UT 84101